UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELLE BOYNE, | : |
| | : |
|     Plaintiff | : |
| | : |
| v. | : |
| | : |
| TOWN AND COUNTRY PEDIATRICS |     No. 3:15-cv-1455 (MPS) |
| AND FAMILY MEDICINE, | : |
| | : |
|     Defendant. | : |

## RULING ON MOTION TO DISMISS

Plaintiff Michelle Boyne filed a two-count Second Amended Complaint against her former employer, Town and Country Pediatrics and Family Medicine, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Count One) and Title II of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA") (Count Two).  Defendant moves to dismiss Plaintiff's Second Amended Complaint ("SAC"). (ECF No. 28.) For the reasons stated below, the Court DENIES Defendant's Motion to Dismiss.  (ECF No. 31.)

### I.    BACKGROUND

#### A.  Factual Background

The following factual allegations are taken from the SAC. Plaintiff is a resident of the City of Bristol, Connecticut. (SAC, ECF No. 28 ¶ 2.)  Defendant is a Connecticut corporation that administers medical services.  (*Id.* at ¶ 3.)  Plaintiff began her employment with Defendant as a full time medical assistant in November 2010.  (*Id.* at ¶ 6.)  She was initially employed through Jackie Matchett Personnel Service, and was officially hired by Defendant on March 14, 2011.  (*Id.* at ¶ 6-7.)

In December 2011, Plaintiff had pregnancy complications and was placed on light work duty.  (*Id.* at ¶ 8.)  At that time, she was diagnosed with HELLP Syndrome, "a life-threatening

pregnancy condition and disability that is a permanent diagnosis." (*Id.* at ¶ 9.) Due to HELLP Syndrome, during pregnancy the Plaintiff suffers from severe abdominal pain, a swollen liver, headaches, tiredness, nausea, and ulcers. (*Id.* at ¶ 11.) In December 2011, the Plaintiff informed the Defendant about her diagnosis with HELLP Syndrome and how it would affect her pregnancy and future pregnancies. (*Id.* at ¶ 12.) On December 31, 2011, the Plaintiff gave birth to a severely premature son due to HELLP Syndrome. (*Id.* at ¶ 13.) Her son did not survive birth. (*Id.* at ¶ 14.) Plaintiff returned to work and was placed on "light duty work with intermittent leave," which the Defendant accommodated. (*Id.* at ¶ 15-16.) Plaintiff was able to perform the essential functions of her job while on light duty. (*Id.* at ¶17.)

Plaintiff discovered that she was pregnant again in September 2013. (*Id.* at ¶ 18.) She was "nervous" to tell Defendant because of her ongoing HELLP Syndrome, and she feared that missing work could result in losing her job. (*Id.* at ¶ 19.) She informed Defendant of her pregnancy in January 2014. (*Id.* at ¶ 20.) As of January 2014, Plaintiff was working 39.5 hours per week for the Defendant. (*Id.* at ¶ 21.) 26 of those hours were spent performing receptionist duties and 13.5 were spent performing medical assistant duties. (*Id.* at ¶ 22.)

On January 31, 2014, Plaintiff had to leave work due to severe stomach pains related to her pregnancy. (*Id.* at ¶ 23.) Her obstetrician and gynecologist ("OBGYN") excused her from work from January 31 to February 5, 2014, due to medical issues from her pregnancy and HELLP Syndrome. (*Id.* at ¶ 23-24.) Plaintiff's OBGYN also required her to be on light duty for the remainder of her pregnancy, meaning that she could not bend or lift anything because it would aggravate her liver function and cause her pain. (*Id.* at ¶ 25, 27.) She called Malkie Scher ("Scher"), the Defendant's office manager, to inform her of these restrictions. (*Id.* at ¶ 26.) Plaintiff's OBGYN provided Defendant with out of work notes and light duty restrictions. (*Id.* at ¶

28.) Plaintiff was able to perform the essential functions of her job while on light duty and with a reasonable accommodation. (*Id.* at ¶ 30.)

On February 4, 2014, Plaintiff received a call from Scher who told her that Dr. Ephraim P. Bartfeld, a doctor for the Defendant, would not allow Plaintiff to return to work until her light duty restrictions were lifted. (*Id.* at ¶ 29.) Plaintiff requested that she be allowed to work the 26 hours per week of her schedule as a receptionist, as that did not require any bending or lifting. (*Id.* at ¶ 31.) Her request was denied, and Defendant did not allow her to return to work at all, because Scher stated that the Defendant did not want to "risk it." (*Id.* at ¶ 33-34.)

On March 10, 2014, Plaintiff gave birth to a premature daughter, who contracted necrotizing enterocolitis ("NEC") and passed away on March 27, 2014. (*Id.* at ¶ 35-36.) On April 18, 2014, Plaintiff's OBGYN released her back to work with the same light duty restrictions of no bending or lifting because of her recovery from HELLP Syndrome. (*Id.* at ¶ 37.) At that time, Plaintiff asked Scher if she could return to work for the 26 hours a week that she had performed receptionist duties. (*Id.* at ¶ 38-40.) Her request was again denied, and Scher informed Plaintiff that Defendant had hired a new receptionist. (*Id.* at ¶ 42.)

Throughout April and May of 2014, Plaintiff remained in contact with Scher about her employment status. (*Id.* at ¶ 43.) On June 12, 2014, Plaintiff sent Scher a text message informing her that Plaintiff's OBGYN would lift her light duty restrictions on July 7, 2014, and that she could return to work on that date. (*Id.* at ¶ 44.) When Scher did not respond to the message, Plaintiff contacted Scher again on June 13 and June 16, 2014, to ask about her employment status. (*Id.* at ¶ 46.) On June 17, 2014, after Scher failed to respond, Plaintiff contacted Gabrielle Ministro ("Ministro"), an employee of Defendant, informed Ministro of her anticipated return to work date, and told her that Scher had not responded. (*Id.* at ¶ 48.) Ministro told the Plaintiff that she would inform the Defendant. (*Id.* at ¶ 49.) When Plaintiff contacted Ministro again on June 18, 2014, she

was told that Dr. Bartfeld was handling her employment.  (*Id.* at ¶ 50.)  Plaintiff then contacted Dr. Bartfeld that same day.  (*Id.* at ¶ 51.)   Dr. Bartfeld informed Plaintiff that Defendant had filled her position.  (*Id.* at ¶ 52.)  He asked her to call back on June 20, 2014.  (*Id.* at ¶ 52.)  Plaintiff called back on June 20, 2014, and Dr. Bartfeld asked her to provide a doctor's note clearing her to return to her regular duties.  (*Id.* at ¶ 53.)  He also informed her that the only hours Defendant could provide her were on Sundays, meaning that Plaintiff's hours would decrease from 39.5 hours to six or seven hours a week.  (*Id.* at ¶ 54.)  On June 30, 2014, Plaintiff received a letter from Defendant stating that her employment with Defendant was terminated.  (*Id.* at ¶ 55.)  Defendant has hired two new receptionists and a new medical assistant.  (*Id.* at ¶ 56.)

### B.  Procedural History

Plaintiff filed an administrative complaint with the Commission on Human Rights and Opportunities ("CHRO") and Equal Employment Opportunity Commission ("EEOC") on July 18, 2014.  (*Id.* at ¶ 5.)  Plaintiff received a Dismissal and Notice of Rights letter dated August 17, 2015. (*Id.*)  Plaintiff filed her original complaint on October 5, 2015.  (ECF No. 1.)   On January 13, 2016, Defendant filed a Motion for a More Definite Statement.  (ECF No. 19.)  The Court granted the motion and ordered the Plaintiff to "submit an amended complaint that sets forth clearly which causes of action she seeks to plead."  (ECF No. 20.)  Plaintiff filed an amended complaint (ECF No. 21), and Defendant filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 22.)  Thereafter, the Court gave Plaintiff an opportunity to file an amended complaint "to address the alleged defects discussed in Defendants' memorandum of law" (ECF No. 24), and she did so on March 10, 2016. (SAC, ECF No. 28.) On March 24, 2016, the

Defendant renewed its motion to dismiss the SAC and incorporated by reference its prior brief.[1] (ECF No. 23.)

## II. STANDARD

Under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570. Under *Twombly*, the Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss. *Id*. at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010). In other words "a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 86 (2d Cir. 2015) (internal quotation marks and citation omitted).

To survive a motion to dismiss in a discrimination case, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by

---

[1] Defendant only incorporated "certain of its arguments" from its original motion to dismiss in its second motion to dismiss. (ECF No. 31, p.2.) Therefore, the Court only addresses the two arguments raised in Defendant's second motion, and deems the other arguments in its original motion abandoned.

giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *E.E.O.C. v. Port Auth. of N.Y. & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) (*quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *Ashcroft v. Iqbal,* 556 U.S. 662, 669–70, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal quotation marks and citations omitted); *see also Vega*, 801 F.3d at 83 (holding that while "*EEOC v. Port Authority* was an Equal Pay Act case and not a Title VII case" its holding applied to Title VII cases).

## III.  DISCUSSION

### A.  Pregnancy Discrimination (Count One)

Plaintiff claims in Count One of the SAC that Defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  "[T]he Pregnancy Discrimination Act clarified that discrimination 'on the basis of sex' includes discrimination 'because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work.' " *Barrett v. Forest Labs., Inc.,* 39 F. Supp. 3d 407, 447 (S.D.N.Y. 2014) (*quoting* 42 U.S.C. § 2000e(k)).

Defendant moves to dismiss Count One of the Second Amended Complaint, arguing that Plaintiff has failed to plead a prima facie case of pregnancy discrimination.  In particular, Defendant argues that Plaintiff has failed to satisfy the fourth element of her prima facie case because she has not identified any similarly situated employees who were treated differently from her.  As noted

6

above, "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss." *Port Auth. of N.Y. & New Jersey*, 768 F.3d at 254.  "A plaintiff can establish a prima facie case of pregnancy discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee.  Alternatively, a plaintiff may establish the fourth element of a *prima facie* case by demonstrating that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 401 (2d Cir. 1998).  "The discrimination complaint . . . must be viewed in light of the plaintiff's minimal burden to show discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)

The Plaintiff's allegations satisfy her "minimal" burden and plead enough facts to suggest that "the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." *Kerzer,* 156 F.3d at 401.  While one way to establish the fourth element of the prima facie claim is to allege that "the employer did accommodate others similar in their ability or inability to work," that is not the only way to raise an inference of discrimination. *Young v. UPS, Inc.*, 575 U.S. --, 135 S. Ct. 1338, 1354 (2015).  "Temporal proximity between the plaintiff's termination and her pregnancy, childbirth, or related medical condition can raise an inference of discrimination" as well. *Briggs v. Women in Need, Inc.,* 819 F. Supp. 2d 119, 128–29 (E.D.N.Y. 2011); *see also Flores v. Buy Buy Baby, Inc.*, 118 F. Supp. 2d 425, 430–31 (S.D.N.Y. 2000) (finding "[t]he temporal proximity of these events is adequate to raise an inference of discrimination" when plaintiff told her employer in "November or December" of her pregnancy and plan to take maternity leave and was fired in "late December"); *Pellegrino v. Cty. of Orange*, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004) ("Evidence of temporal proximity between an employee's request for maternity leave and her termination is sufficient to establish an inference of

7

discrimination."); *see also El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII."); *Govori v. Goat Fifty, L.L.C.*, 519 F. App'x 732, 734 (2d Cir. 2013) (*El Sayed*'s "reasoning is equally applicable" in the Title VII pregnancy discrimination context).

Plaintiff's complaint alleges a close temporal proximity between her pregnancy and the denial of her request to continue light duty restrictions and ultimately her termination. Plaintiff alleges that she was excused from work for a week by her doctor due to complications from her high risk pregnancy, and was then told she could not return to work for the remainder of her pregnancy because Defendant did not want to "risk it." (ECF No. 28 at ¶ 34.) Plaintiff asked to work the twenty-six hours a week of her schedule performing receptionist duties, which were within her work restrictions set by her doctor, and was denied. After her maternity leave ended in April, Plaintiff again asked to return to work with light duty restrictions, and was again denied, and told that Defendant had hired a new receptionist. She stayed in contact with Defendant's office manager throughout April and May about her employment status. On June 12, 2014, she told the office manager that her light duty restrictions would be lifted on July 7, 2014, and that she would return to work on July 7. She did not receive a response. On June 18, 2014, she was told that her position has been filled, and on June 20, 2014, Plaintiff was told that Defendant could offer only six to seven hours per week. On June 30, 2014, Plaintiff received a letter from Defendant notifying her that her employment with the company was terminated. Plaintiff alleges that she repeatedly requested to work her hours performing receptionist duties, as she had been doing before her pregnancy, as an accommodation due to her high-risk pregnancy, medically complicated birth, and continuing medical issues due to HELLP Syndrome. She kept in close contact with the office manager

throughout her pregnancy and maternity leave, and her requests for a reasonable accommodation were repeatedly denied.

Plaintiff also makes other allegations in her complaint and her CHRO complaint that give rise to an inference of discrimination. She alleges that there were two other women in the office who were pregnant at the same time, and that Defendant did not allow her to work light duty because of the "high amount of pregnancies in the office," suggesting that her pregnancy contributed to the Defendant's decision. (ECF No. 35-2 at 5-6.)[2] Furthermore, plaintiff alleges that the Defendant hired two new receptionists as well as a medical assistant. (*Id.* at 7.) While Plaintiff does not allege that the new employees who filled her position were not pregnant, these allegations are enough to permit an inference of discrimination on the basis of her pregnancy and the related medical condition. *See Dollman v. Mast Indus., Inc.,* 731 F. Supp. 2d 328, 339 (S.D.N.Y. 2010) (holding that the plaintiff had raised an inference of unlawful discrimination even though she did not "specifically identify a non-pregnant replacement who filled her position."). Because Plaintiff has met her "minimal" burden of alleging sufficient facts to raise an inference of discrimination, the Defendant's Motion to Dismiss Count One is DENIED.

### B. Disability Discrimination and Failure to Accommodate (Count Two)

Defendant moves to dismiss Count Two of the Amended Complaint on the ground that Plaintiff failed to exhaust her administrative remedies as to her disability discrimination claim. "ADA Title I incorporates various provisions from Title VII of the landmark Civil Rights Act of 1964. One of these provisions, section 2000e–5, requires a claimant to file a charge of employment discrimination with the EEOC within 180 days after the discriminatory act." *McInerney v. Rensselaer Polytechnic Inst.,* 505 F.3d 135, 138 (2d Cir. 2007). While the ADA does impose an

---

[2] Because the CHRO complaint is incorporated by reference in the SAC (ECF No. 28 at ¶ 5), the Court may consider it on a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 152 (2d. Cir. 2002).

exhaustion requirement on plaintiffs, "a federal court may entertain a claim not alleged in an EEOC charge if it is reasonably related to the allegations in the EEOC charge." *LaCoparra v. Pergament Home Centers, Inc.,* 982 F. Supp. 213, 226 (S.D.N.Y. 1997) (internal citations and quotation marks omitted). The Second Circuit detailed what is considered "reasonably related" in *Williams v. N.Y. City Hous. Auth.*:

> This Circuit has recognized that "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson,* 251 F.3d 345, 359–60 (2d Cir.2001) (internal quotation marks omitted). In this inquiry, "the focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *Deravin v. Kerik,* 335 F.3d 195, 201 (2d Cir.2003) (quoting *Freeman v. Oakland Unified Sch. Dist.,* 291 F.3d 632, 637 (9th Cir.2002)). The central question is whether the complaint filed with the EEOC gave that agency "adequate notice to investigate discrimination on both bases." *Id.* at 202. The "reasonably related" exception to the exhaustion requirement "'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering.'" *Id.* at 201 (quoting *Butts,* 990 F.2d at 1402) (alteration in original).

458 F.3d 67, 70 (2d Cir. 2006) (footnote omitted).

Plaintiff filed her complaint with the CHRO on July 18, 2014. On the cover sheet of her CHRO complaint, Plaintiff marked the boxes "sex – female" and "pregnancy" as "factor/factors in this action." She argues that she has exhausted her administrative remedies because her ADA claim is reasonably related to her claim under the Pregnancy Discrimination Act. Defendant argues that the claim is not reasonably related because it did not give the CHRO "adequate notice to investigate discrimination on both bases." *Williams*, 458 F.3d at 70. The Defendant argues that the CHRO did not have adequate notice because the complaint does not use the word "disability" or mention a medical condition outside of the pregnancy itself.

While this is a "close call," the Court finds that the CHRO complaint is worded in a way that makes the ADA claim reasonably related to the pregnancy discrimination claim. *LaCoparra v.*

*Pergament Home Centers, Inc.,* 982 F. Supp. 213, 226 (S.D.N.Y. 1997).  Plaintiff's CHRO complaint mentions a serious medical condition, namely HELLP Syndrome.  (Exh. B, ECF No. 35-2, 5.)  It also details her high-risk pregnancy and lengthy recovery process due to HELLP Syndrome.  (*Id.*)  The CHRO complaint clearly articulates that Plaintiff suffered from a medical condition aside from her pregnancy, even if it does not use the term "disability."[3]  It also clearly alleges that Plaintiff suffered from this condition starting in December of 2011.  Given this background, the CHRO could reasonably infer that her condition persisted in her second pregnancy.  (*Id.*)  Plaintiff also alleges that there were a "high amount of pregnancies in the office" at the time she alleges she was discriminated against, and that "both women who were pregnant at the same time . . . are still employed" by the Defendant.  (*Id.* at 6.)  This suggests that other pregnant women without a disability were treated more favorably; in other words, she was discriminated against for more than just her pregnancy.  Furthermore, in Plaintiff's CHRO complaint, she details her requests for light duty work, listed her restrictions which included "no bending or lifting," and asked for "accommodation" as a remedy.  (*Id.*)[4]  The allegations in her CHRO complaint gave the CHRO

---

[3] The Pregnancy Discrimination Act states that discrimination "on the basis of sex" includes discrimination "because of or on the basis of pregnancy, childbirth, or *related medical conditions*." 42 U.S.C. § 2000e(k) (emphasis added).  While HELLP Syndrome could be classified as a "related medical condition" under the PDA, it could also be a disability under the ADA.  The Supreme Court has held that "reproduction is a major life activity for the purposes of the ADA." *Bragdon v. Abbott*, 524 U.S. 624, 639, 118 S. Ct. 2196, 2205, 141 L. Ed. 2d 540 (1998).  Given this precedent, the fact that Plaintiff suffered from HELLP Syndrome, which interfered with her reproduction, gave the CHRO adequate notice that she was alleging discrimination on the basis of her pregnancy and a disability.

[4] Defendant abandoned its argument from its first Motion to Dismiss that Plaintiff has not alleged that she has a disability, because pregnancy is not considered a disability under the ADA.  (ECF No. 23 at 10.)  While the argument is abandoned, it remains relevant to whether Plaintiff's ADA claim is "reasonably related" to her pregnancy discrimination claim.  It is true that pregnancy is not typically a disability within the meaning of the ADA.  *See LaCoparra v. Pergament Home Centers, Inc.*, 982 F. Supp. 213, 228 (S.D.N.Y. 1997); *Wanamaker v. Westport Bd. of Educ.,* 899 F. Supp. 2d 193, 210–11 (D. Conn. 2012).  Despite that, courts have found that an ADA claim can arise from "severe medical complications resulting from [a] pregnancy." *Bateman v. Project Hosp., Inc.,* 2009

11

"adequate notice to investigate discrimination on both bases." *Williams*, 458 F.3d at 70. Especially because the "reasonably related doctrine" is "essentially an allowance of loose pleading . . . based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel," the Court finds that Plaintiff's ADA claim was properly exhausted. *Id.*

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES Defendant's motion to dismiss Counts One and Two.

IT IS SO ORDERED.

                                                              /s/
                                      Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
              February 7, 2017

---

WL 3232856, at *10 (E.D.N.Y. Sept. 30, 2009) (*citing Cerrato v. Durham,* 941 F.Supp. 388, 392–94 (S.D.N.Y.1996); *Reilly v. Revlon,* 620 F.Supp.2d 524, 546 (S.D.N.Y.2009)). Here, the SAC states that "[i]n or around December 2011, the plaintiff was diagnosed with HELLP Syndrome, a life-threatening pregnancy condition and disability that is a *permanent diagnosis.*" (ECF No. 28 at ¶ 9 (emphasis added).)